# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LILLIE HENSHAW, | ) |
|           **Plaintiff,** | ) |
| v. | ) Case No. CIV-09-344-SPS |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
|           **Defendant.** | ) |

## OPINION AND ORDER

The claimant Lillie Henshaw requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 9, 1955, and was fifty-three years old at the time of the administrative hearing (Tr. 92). She has an eleventh grade education (Tr. 121) and previously worked as a home health provider, a latch assembler, and a packager (Tr. 22). The claimant alleges inability to work since April 1, 2005 because of diabetes, high blood pressure, high cholesterol, back pain, neck pain, and depression (Tr. 116).

## Procedural History

The claimant applied on January 25, 2006 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Deborah Rose conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated February 3, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant's severe impairments of degenerative disk disease, dysthymia and/or schizoaffective disorder and anxiety did not prevent her from performing the full range of light work defined in 20 C.F.R. §§ 404.1567(b), *i. e.*, she could lift 10 pounds frequently and 20 pounds occasionally, stand/walk/sit for six hours in an eight-hour workday, climb, stoop, and crouch occasionally but not reach overhead, and perform only simple, routine

tasks associated with unskilled work (Tr. 14). The ALJ concluded that the claimant was not disabled because she could return to her relevant work as a latch assembler (Tr. 17).

**Review**

The claimant contends that the failed to properly analyze the medical evidence of record, *i. e.*, the ALJ engaged in improper "picking and choosing" among the evidence and failed to properly consider the opinion of a treating source. Because the ALJ *did* fail to properly consider probative evidence in the claimant's medical record, the decision of the Commissioner must be reversed and the case remanded for further analysis.

The claimant's medical records reveal that she began receiving medication from Dr. Carl Smith, D.O. to treat depression and anxiety as early as July 26, 2004 (Tr. 236). The claimant has also sought treatment as early as March 2, 2006 at CREOKS Mental Health Services, at which time she was complaining of being more forgetful and seeing things (Tr. 252). Claimant presented again on May 26, 2006 at CREOKS to Francis M. Shelton, Ed.D., B.H.R.S. with reports of forgetfulness, problems sleeping, and hallucinations (Tr. 259). She stated at that time that she does not believe she could work due to her mental state (Tr. 261) and reported that there are "days when she would like to hit or choke someone" (Tr. 262). A treatment plan was put together on May 30, 2006 based on her "major depression with psychotic features" and she was assigned a GAF score of 45 at that time (Tr. 253-8). The next treatment plan composed by CREOKS was done on May 21, 2007, where it was noted that claimant suffered from schizoaffective disorder and her GAF was 47 (Tr. 379). Claimant complained of poor concentration at

that time, which was primarily caused by pain in her hips and back (Tr. 378). Further, claimant complained of hallucinations two to three times per week (Tr. 378).

The claimant was examined by Dr. Joseph Tran in connection with her disability claim on April 11, 2006 (Tr. 240-42). At that time, the claimant related that she had began experiencing visual hallucinations since suffering a bout of bacterial meningitis that necessitated a six-day hospital stay at Southcrest Hospital (Tr. 176). The claimant also stated that she had begun experiencing auditory hallucinations as well, but that the voices she hears do not talk directly to her or tell her to harm anyone (Tr. 240). Dr. Tran noted that claimant appeared to be in distress and very nervous and anxious when speaking about the hallucinations she had been having (Tr. 241). Dr. Tran also noted that he had to have claimant's husband come in to the appointment to better explain claimant's hallucinations, as her "thought process seem[ed] to be not very clear at first" (Tr. 241). His assessment included recommending psychiatric evaluation (Tr. 242).

Thereafter, claimant was referred to Dr. Lawrence Kaczmarek, M.D. for a psychiatric evaluation on June 12, 2006 (Tr. 247-50). At that appointment, claimant stated that she felt depressed every day and that her auditory hallucinations "involve not being able to understand what is being said, but thinking that people are outside of her house" (Tr. 248). Despite diagnosing claimant with depressive disorder with reported auditory perceptual disturbance (and to rule out depressive disorder with psychotic features, dysthymic disorder, personality disorder, and borderline intellectual functioning), along with recommending a complete psychiatric assessment, Dr. Kaczmarek assigned a Global Assessment of Functioning (GAF) score of 63 (Tr. 250).

The claimant was also assessed by Dr. Annette Miles, Ph.D. on June 19, 2007 (Tr. 355-57). Dr. Miles noted that claimant reported that she had low energy and "gets into rages" (Tr. 356). She reiterated her claim of hallucinations, saying that she "hear[s] and sees people talking 'like they are carrying on a conversation'" (Tr. 356). Dr. Miles diagnosed claimant with dysthymic disorder, anxiety disorder, psychotic disorder, and borderline intellectual functioning and assigned a GAF of 57 (Tr. 357). She further opined that claimant's "ability to adapt to work situations may be impaired by her cognitive deficits, intellectually and with apparent psychotic symptoms" (Tr. 357).

Finally, two separate Psychiatric Review Techniques (PRTs) were performed, one on June 21, 2006 by Dr. Ron Smallwood, Ph.D. and one on July 18, 2007 by Dr. Janice B. Smith, Ph.D. Dr. Smallwood found that claimant did not suffer from any severe impairments and concluded that claimant's depression with audio hallucinations only mildly limited her ability to maintain social functioning (Tr. 267-79). Dr. Smallwood assigned to claimant a GAF of 63 (Tr. 279). Dr. Smith found that claimant suffered from dysthymic disorder characterized by sleep disturbance and hallucinations, delusions or paranoid thinking and anxiety disorder (Tr. 358-70). Dr. Smith found that claimant was mildly limited in her activities of daily living and social functioning and moderately limited in her ability to maintain concentration, persistence, or pace (Tr. 368). In addition, Dr. Smith performed a mental RFC assessment in conjunction with a PRT, and found that claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions (Tr. 372-73).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ failed to follow this directive, choosing instead to discuss only evidence that supported his finding of non-disability. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The ALJ briefly mentioned the claimant's treatment notes from CREOKS, noting that she was treated there, had reported people getting on her nerves, and was found to be "depressed, illogical, and of below average intellect" (Tr. 16). The ALJ did not mention, however, that the claimant had received global assessment of functioning ("GAF") scores of 47 and 45. Low GAF scores do not necessarily reflect an inability to perform work, but scores of 47 and 45 do indicate severe functional limitations that could prevent the claimant from performing work. *See Lee v. Barnhart,* 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("A GAF score of fifty or less . . . *does* suggest an inability to keep a job.") [emphasis added], *citing Oslin v. Barnhart,* 69 Fed. Appx. 942, 947 (10th Cir. 2003) ("A GAF rating between 41 and 50 indicates '[s]erious symptoms (*e. g.*, suicidal ideation . . .) OR any serious impairment in social, occupational, or school functioning (*e. g.*, . . .

unable to keep a job)[.]'"), *quoting* Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* p. 34 (4th ed. 2000). *See also Berryhill v. Barnhart,* 64 Fed. Appx. 196, 200 (10th Cir. 2003). In any event, while the ALJ was not bound to accept such scores, neither was she free to simply ignore them. *See, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). At a minimum, the ALJ should have considered whether the claimant's low GAF resulted from non-occupational factors. *See Givens v. Astrue,* 251 Fed. Appx. 561, 567 n. 4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job. Even assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation omitted].

Because the ALJ failed to discuss probative evidence potentially inconsistent with her RFC assessment, the Court cannot determine whether she actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga*, 482 F.3d at 1207-08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that

are not apparent from the ALJ's decision itself."). Consequently, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, she can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied, and the decision of the Commissioner is therefore not supported by substantial evidence. The Commissioner's decision is accordingly hereby REVERSED and the case REMANDED for further proceedings as set forth above.

**DATED** this 30th day of September, 2010.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**